1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

**Feb 14, 2023**

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KATHLEEN S.,[1]<br><br>    Plaintiff,<br><br>    v.<br><br>KILOLO KIJAKAZI,<br>ACTING COMMISSIONER OF<br>SOCIAL SECURITY,[2]<br><br>    Defendant. | No. 2:21-CV-00179-ACE<br><br><br>ORDER GRANTING PLAINTIFF'S<br>MOTION FOR SUMMARY<br>JUDGMENT<br><br><br>**ECF Nos. 16, 19** |

**BEFORE THE COURT** are cross-motions for summary judgment.  ECF No. 16, 19.  Attorney D. James Tree represents Kathleen S. (Plaintiff); Special Assistant United States Attorney Justin L. Martin represents the Commissioner of Social Security (Defendant).  The parties have consented to proceed before a magistrate judge.  ECF No. 6.  After reviewing the administrative record and the

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew M. Saul as the defendant in this suit.  No further action need be taken to continue this suit. *See* 42 U.S.C. § 405(g).

briefs filed by the parties, the Court **GRANTS** Plaintiff's Motion for Summary Judgment and **DENIES** Defendant's Motion for Summary Judgment.

## JURISDICTION

Plaintiff protectively filed an application for Disability Insurance Benefits on January 25, 2016, alleging disability since April 1, 2009. Tr. 15, 79. The applications were denied initially and upon reconsideration. Tr. 80-88, 90-99. Administrative Law Judge (ALJ) Kimberly Boyce held a hearing on October 24, 2017, Tr. 37-78, and issued an unfavorable decision on June 18, 2018. Tr. 12-27. Plaintiff requested review by the Appeals Council and the Appeals Council declined to review the decision. Tr. 1-6. Plaintiff then appealed the denial to this Court, which resulted in a stipulated remand order dated January 13, 2020, in which the parties stipulated that the ALJ would take any steps necessary to develop the administrative record, issue a new decision, conduct a de novo hearing (if a fully favorable decision could not be issued on the record), revaluate whether Plaintiff's impairments met or equaled a listed impairment, reevaluate the medical opinion evidence, reevaluate Plaintiff's RFC, and obtain supplemental vocational expert testimony, if necessary. Tr. 1033-35. On February 28, 2020 the Appeals Council vacated the prior ALJ decision and remanded the case to an ALJ. Tr. 1039-40. On July 27, 2020, and in a supplemental hearing February 8, 2021[3], Plaintiff appeared before ALJ Lori Freund, who issued an unfavorable decision on March 23, 2021. Tr. 868-90, 897-41, 942-95. The Appeals Council did not

---

[3] The ALJ held a supplemental hearing on February 8, 2021. *See* Tr. 871, 941. There is a typographical error in the hearing date on the first and third pages of the February 2021 hearing transcript, however, which lists the supplemental hearing date as "February 8, 2020." Tr. 897, 899. The date is written correctly in the transcription of the ALJ's opening statement and on the last page of the hearing transcript. Tr. 899, 941.

ORDER GRANTING PLAINTIFF'S MOTION . . . - 2

assume jurisdiction of the case, making the ALJ's March 2021decision the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).  Plaintiff filed this action for judicial review on May 28, 2021. ECF No. 1.

## STANDARD OF REVIEW

The ALJ is tasked with "determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable interpretation of the applicable statutes.  *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).  The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance.  *Id*. at 1098.  Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1098; *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).  If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive.  *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).  Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.  *Brawner v. Sec'y of Health and Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled.  20 C.F.R. § 404.1520(a), 416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987).  In steps one through four the claimant bears the burden of establishing a prima facie case of disability. *Tackett*, 180 F.3d at 1098-1099.  This burden is met once a claimant establishes that a physical or mental impairment prevents the claimant from engaging in past relevant work.  20 C.F.R. § 404.1520(a)(4), 416.920(a)(4).  If a claimant cannot perform past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show (1) that Plaintiff can perform other substantial gainful activity and (2) that a significant number of jobs exist in the national economy which Plaintiff can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1497-1498 (9th Cir. 1984); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).  If a claimant cannot make an adjustment to other work in the national economy, the claimant will be found disabled.  20 C.F.R. § 404.1520(a)(4)(v), 416.920(a)(4)(v).

## ADMINISTRATIVE FINDINGS

On March 23, 2021, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act through her date last insured of June 30, 2010.  Tr. 868-90.

At step one, the ALJ found Plaintiff, who met the insured status requirements of the Social Security Act through June 30, 2010, had not engaged in substantial gainful activity during the period from her alleged onset date of April 1, 2009 through her June 30, 2010 date last insured.  Tr. 874.

At step two, the ALJ determined through the date last insured Plaintiff had the following severe impairments: degenerative disc disease of the cervical and lumbar spine; left shoulder impingement syndrome; osteoarthritis of the hips; and hypertension.  *Id*.

At step three, the ALJ found through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. *Id*.

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and found that through her date last insured she could perform light work, with the following limitations:

> [Plaintiff] could sit for one hour at a time and up to six hours total in an eight-hour workday; she could stand and/or walk for one hour at a time and up to four hours total in an eight-hour day; she could never crawl or climb ladders, ropes, or scaffolds; she could occasionally balance, stoop, kneel, crouch, and climb ramps or stairs; she should avoid all unprotected heights, dangerous machinery, extreme cold and heat, and excessive vibration; and she should avoid even moderate exposure to the operational control of moving machinery.

Tr. 877.

At step four, the ALJ found Plaintiff was unable to perform past relevant work.  Tr. 881.

At step five, the ALJ found that, based on the testimony of the vocational expert, and considering Plaintiff's age, education, work experience, and RFC, through the date last insured Plaintiff could perform jobs that existed in significant numbers in the national economy, including the jobs of production assembler; assembler (electronics accessories); and routing clerk.  Tr. 882.

The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act through June 30, 2010, the date last insured. Tr. 883.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II of the Social Security Act.  The

question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.  Plaintiff raises the following issues for review (1) whether the ALJ properly evaluated Plaintiff's symptom complaints; (2) whether the ALJ properly evaluated the medical opinion evidence; (3) whether the ALJ properly applied the Grid Rules; (4) whether the ALJ conducted a proper step-five analysis; and (5) whether the ALJ properly assessed the lay witness opinions.

## DISCUSSION

### A.    Plaintiff's Symptom Claims

Plaintiff contends the ALJ erred by not properly assessing Plaintiff's testimony.  ECF No. 16 at 7-9.  It is the province of the ALJ to make determinations regarding a claimant's subjective statements.  *Andrews,* 53 F.3d at 1039.  However, the ALJ's findings must be supported by specific, cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).  Once the claimant produces medical evidence of an underlying medical impairment, the ALJ may not discredit testimony as to the severity of an impairment merely because it is unsupported by medical evidence.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).  Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing."  *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).  "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Lester* at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

The ALJ concluded Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not fully consistent with the medical evidence and other evidence in the record.  Tr. 878.

Plaintiff contends the only reason the ALJ gave was that objective evidence from the relevant period does not fully support the level of limitation claimed, and that this is legally insufficient.  ECF No. 16 at 7-9.  Defendant contends the ALJ "gave four legally sufficient reasons for discounting her symptom testimony," but Defendant only lists three reasons.  ECF No. 19 at 9-13.

The Court finds the ALJ gave two reasons to discount Plaintiff's symptom claims, neither of which was a clear and convincing reason supported by substantial evidence to discount her symptom claims.

### 1. Inconsistent with Objective Medical Evidence

The ALJ found that prior to the disability onset date, Plaintiff's allegations were inconsistent with objective evidence.  Tr. 878-79.  An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence.  *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch*, 400 F.3d at 680.  However, the objective medical evidence is a relevant factor, along with the medical source's information about the claimant's pain or other symptoms, in determining the severity of a claimant's symptoms and their disabling effects.  *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).

Here, the ALJ found that "as for the limiting effects of his or her symptoms, they are inconsistent because the objective evidence from the relevant period does not fully support the level of limitation claimed."  Tr. 878.  The ALJ, however, provided only a cursory summary of medical evidence, misstated evidence, and failed to include relevant evidence; and much of the evidence cited supports Plaintiff's symptom complaints.

The ALJ noted that "medical records establish that [Plaintiff] was involved in a motor vehicle accident, and [Plaintiff] alleges ongoing pelvic and hip pain

stemming from her injuries in that accident." Tr. 878. This is factually incorrect. As Plaintiff points out, Plaintiff had a series of significant injuries in the mid-2000s, including a serious motor vehicle accident in 2006, resulting in C5-C6 fusion surgery for cervical fracture, with residuals including posttraumatic including cervicothoracic syrinx; she was also hospitalized, however, in early January 2008 for multitrauma secondary to a fall. ECF No. 16 at 3; *see* 454-55, 2518, 2534-35. Records show she fell 15 feet off her deck and sustained pelvis and elbow fractures, resulting in surgery for left radial head excision (elbow) along with inpatient rehabilitation for her injuries in January 2008. *See, e.g.*, Tr. 2518, 2534-35. X-rays at that time showed pelvic fractures, along with advanced degenerative disc disease in the lower lumbar spine and to a lesser extent the SI joints. Tr. 2405. A CT scan at that time showed findings including acute left sacral fracture, right symphysis pubis fracture, and vertical fracture of left pubic ramus. Tr. 2427. The ALJ indicated these occurred in an earlier accident and found her pelvic injury nonsevere, when this injury occurred closer to her alleged onset date and treatment records show residuals and/or reinjury and possible nonunion of the pelvic fracture through her alleged onset date; the ALJ mentioned her pelvic fractures briefly at step two and once elsewhere in the decision, and the medical expert at the hearing failed to mention the accident or injury at all, despite the fact that Plaintiff's treating provider, Dr. Abbott opined that her "major injury" was multitrauma due to the fall with pelvic fractures and left elbow fracture Tr. 862, 2658; *see generally* Tr. 871-83.

At step two the ALJ noted Plaintiff's report of a fall and reinjury to her pelvis in February 2010, which is within the period at issue; and records from the ER on February 12, 2010 also show she "fell yesterday reinjuring her pelvis." Tr. 1690. The provider noted at that time "she has had chronic pelvic pain after suffering a nondisplaced pelvic rami fracture a couple years ago" and that "she has been followed for quite some time for this and is on chronic Oxycontin . . . and

Percocet . . . which she takes a couple of times a day for breakthrough pain." Tr. 1690-91.

The ALJ also did not discuss relevant findings from a February 2009 appointment with her orthopedic surgeon, which was two months from her alleged onset date, and showed continued issues with her pelvis, including possible nonunion of the fractures(s) 13 months after her 2008 injury and pelvic fractures. *Id*. At that time, her orthopedist noted her report she fell hard onto her left hip and that she reported increased pain, and the specialist observed objective findings upon physical exam including decreased range of motion, crepitus on the left "where the psoas tendon rides," and "mildly positive Stinchfield test on that side as well," which Plaintiff notes is a test for assessing hip pathology. Tr. 1340; *see* ECF No. 16 at 9. The specialist diagnosed her with left hip pain secondary to psoas tendonitis, and possible continued nonunion of her left superior pubic ramus fracture two months from her alleged onset date. *Id*. The ALJ did not discuss the orthopedist's findings and appeared focused on her use of narcotic pain medicine; the ALJ noted that in February 2009, "however, the [Plaintiff] requested additional medication after a reported fall while going down to the laundry room." Tr. 878 (citing Tr. 1349). The ALJ's failure to address relevant objective evidence and focus on her use of narcotic pain medication, even though the records cited by the ALJ cited show her doctors prescribed these medications for chronic pain and monitored her use of them, minimized Plaintiff's reports of pain. For example, the ALJ noted "despite her reports of pain, she was apparently able to go bowling in March 2009," but the ALJ also noted records showed she entered a narcotic pain medication contract with Dr. Abbott in June 2009 as part of her treatment for chronic pain from prior injuries. Tr. 878. The ALJ also cited records which show she was treated for chronic pain throughout the period at issue, which supports her symptom claims; records from this time show chronic pain in her neck/cervical spine, low back, pelvis and hip due to multiple traumas including fractures, and

ORDER GRANTING PLAINTIFF'S MOTION . . . - 9

degenerative disc and degenerative joint disease.  *See e.g.*, Tr. 304, 307, 310, 313, 316, 319, 322.

The ALJ noted "she also reported in October 2009 that she had lumbar pain, and Dr. Abbott reported she exhibited 'tenderness in the bilateral lumbar paravertebral muscles and the lumbar spine'"; and the ALJ noted "Plaintiff rated her average pain as 4/10 in severity . . . 7/10 at worst.'"  Tr. 878 (citing Tr. 313, 316).  The ALJ does not discuss x-rays taken at the time of her January 2008 hospitalization, however, which included findings of advanced degenerative disc disease in the lower lumbar spine and, to a lesser extent, the SI joints.  Tr. 2405. The ALJ concluded "records from the relevant period primarily shows that Dr. Abbott refilled the Plaintiff's narcotic pain medication prescriptions each month and noted only vague 'tenderness' over the cervical and lumbar spine in his notes." Tr. 878 (citing Tr. 322, 325, 357).  However, the ALJ cited to only three visits during the period at issue, did not discuss previous traumatic injuries, which treating provider Dr. Abbott indicated were the cause of her chronic pain, discussed only some of the objective findings upon exam, and concluded such findings were "vague" without explanation.  Tr. 878.  The ALJ noted, for example, that in February 2010 Plaintiff went to the ER with reports of increased pelvic pain, and that after that "Dr. Abbott added Gabapentin to her medication regimen." Tr. 878 (citing Tr. 334, 339).  Treatment records reveal at the follow up visit with Dr. Abbott, however, he noted her history of chronic back and pelvic pain due to multiple traumas, he observed objective findings including antalgic gait upon exam, and only then added gabapentin to her narcotic pain control regimen.  Tr. 339.

The ALJ's characterization of the evidence also resulted in minimizing her other severe impairments and her symptoms.  The ALJ noted Plaintiff's "history of left shoulder complaints in 2006 and 2007 with treatment including injections," and noted she went to the ER in June 2010 reporting left shoulder pain, and that x-

ray at that time "revealed a likely bone infarct of the proximal humeral metaphysis." Tr. 879. The ALJ does not discuss this evidence further, noting only that Dr. Abbott "increased her pain medication dosage in June and July 2010, but his treatment notes only included findings of 'tenderness.'" Tr. 879 (citing Tr. 365, 367). Records from the ER visit, however, show she reported left shoulder pain for two months along with a remote injury, and x-ray at that time showed likely bony infarct of proximal humeral metaphysis less likely an enchondroma. Tr. 602-03. While the ALJ found she had a left shoulder impairment, there is limited discussion of objective evidence supporting her symptoms, and no limitation in the RFC for this impairment.

The ALJ also found hypertension as a severe impairment. Tr. 874. The ALJ appeared to discount hypertension during the period at issue, however; the ALJ noted one appointment in January 2010 when Dr. Abbott reported Plaintiff's high blood pressure was "white coat," because "her blood pressure tested normal at home but not in his office." Tr. 878 (citing Tr. 325). At that time, however, Dr. Abbott was treating Plaintiff with *two* medications for hypertension, and records show persistent often uncontrolled hypertension prior to and throughout the period at issue. *See, e.g.*, Tr. 343, 354, 2537. Records also show Dr. Abbott increased Metoprolol, one of her two blood pressure medications, a few weeks later after poorly controlled hypertension was noted at her ER visit in February 2010. Tr. 333-34, 339. Further, at the end of the same paragraph in the decision finding hypertension was only "white coat," the ALJ then discounted her report she often needed to lie in bed all day by attributing her symptoms to hypertension; the ALJ concluded one occasion when she reported she had to lie in bed "was apparently during an episode of high blood pressure where she felt ill overall." Tr. 879. The analysis is contradictory, minimizes her symptom claims, and does not accurately reflect the medical evidence during the period at issue.

The ALJ failed to discuss relevant medical evidence and misstated evidence, including her history of pelvic fractures, which Plaintiff's treating physician indicated was her "major injury" prior to her date last insured, as discussed *supra*. An ALJ must consider all of the relevant evidence in the record and may not point to only those portions of the records that bolster his findings. *See, e.g., Holohan v. Massanari*, 246 F.3d 1195, 1207-08 (9th Cir. 2001) (holding that an ALJ cannot selectively rely on some entries in plaintiff's records while ignoring others). In citing portions of the record that show milder examination findings while the longitudinal record shows more mixed results during the relevant period at issue, the ALJ's characterization of the record is not supported by substantial evidence. The ALJ's conclusion that Plaintiff's symptom testimony is not consistent with objective medical evidence is therefore not supported by substantial evidence.

    2.  *Activities*

The ALJ concluded that Plaintiff's activities were inconsistent with her allegations. Tr. 878. The ALJ may consider a claimant's activities that undermine reported symptoms. *Rollins*, 261 F.3d at 857. If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms. *Fair*, 885 F.2d at 603; *Molina*, 674 F.3d at 1113. "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13.

Here, the ALJ found "despite her reports of pain, she was apparently able to go bowling in March 2009." Tr. 878 (citing Tr. 1353). The ALJ also noted that at an appointment in October 2009 "she also stated that she was currently working and enjoyed her job." Tr. 878 (citing Tr. 316). The ALJ discussed her part-time

work activity in 2009 at step one, however, noting earnings records show only $1,048,50 in income in 2009, far below SGA levels; and Plaintiff testified at the 2017 hearing that she tried to work over at a Pier 1 store in 2009, but this was not full-time work and she had difficulty doing the work due to pain.  Tr. 874; *see e.g.*, Tr. 50-54, 968-69.  At the visit where she reported she enjoyed her job, she also reported her pain level was 7/10.  Tr. 316.  While she reported she went bowling one time in March 2009, she also injured her knee at that time, and the ALJ did not discuss this or any other activity further.

These general findings are insufficient to undermine Plaintiff's symptom claims.  It is well-established that a claimant need not be "utterly incapacitated" to be eligible for benefits.  *Fair*, 885 F.2d at 603.  The Court also cannot affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss.  *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).  Here, while the ALJ mentions Plaintiff's one time bowling and report she was working and enjoying it one occasion, these facts are briefly noted without any accompanying discussion of their import on the disability analysis, what symptoms were undermined by these activities, or why.  *See* Tr. 878.  Without further explanation of the ALJ's reasoning, a finding that Plaintiff's activities were inconsistent with her symptom claims is not supported by substantial evidence, and this was not a clear and convincing reason to discount her symptom claims.

### 3.  Lack of Treatment

Defendant contends "the ALJ reasonably determined that Plaintiff's allegations of disabling impairments were incompatible with lack of treatment during the relevant period," but the page Defendant cites to, Tr. 884, is not part of the text of the decision.  ECF No. 19 at 9; *see* Tr. 871-83.  While the ALJ did note that "despite the voluminous record, the evidence from the relevant period is relatively small" in discussing Plaintiff's symptom complaints, Tr. 878, the only place the ALJ mentioned limited medical treatment during the relevant period was

at step two, when the ALJ found "little to no treatment of her hips" during the period at issue. Tr. 874. The Court will therefore not consider Defendant's *post hoc* rationalization. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely.").

The Court also notes that the period at issue from her alleged onset date to her date last insured was 14 months in a record that spans over a decade, but that records during that brief amount of time show regular treatment by Dr. Abbott and specialists, including daily narcotic pain medication for chronic pain from her prior injuries; Dr. Abbott and others indicated her symptoms, including chronic pain, were a result of her history of multiple fractures/traumatic injuries, some of which the ALJ failed to discuss prior to her date last insured.

The ALJ's failed to provide clear and convincing reasons supported by substantial evidence to reject Plaintiff's claims. In the absence of a clear and convincing reason to discount symptom reports, the limitations in a claimant's symptom reports must be made part of the RFC. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) ("[T]he ALJ failed to provide clear and convincing reasons for finding Lingenfelter's alleged pain and symptoms not credible, and therefore was required to include these limitations in his assessment of Lingenfelter's RFC."). Upon remand the ALJ shall reevaluate the medical evidence and reconsider Plaintiff's symptom claims, providing clear and convincing reasons supported by substantial evidence to discount her claims, or including them in the RFC.

**B.    Medical Opinions**

Plaintiff contends the ALJ erred by improperly evaluating the medical opinions of Michael Abbott, MD, Rox Burkett, MD, and Louis Fuchs, MD. ECF No. 16 at 9-19.

ORDER GRANTING PLAINTIFF'S MOTION . . . - 14

1    There are three types of physicians: "(1) those who treat the claimant
2    (treating physicians); (2) those who examine but do not treat the claimant
3    (examining physicians); and (3) those who neither examine nor treat the claimant
4    [but who review the claimant's file] (nonexamining [or reviewing] physicians)."
5    *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted).
6    Generally, a treating physician's opinion carries more weight than an examining
7    physician's opinion, and an examining physician's opinion carries more weight
8    than a reviewing physician. *Id.* at 1202. "In addition, the regulations give more
9    weight to opinions that are explained than to those that are not . . . and to the
10   opinions of specialists concerning matters relating to their specialty over that of
11   nonspecialists." *Id*. (citations omitted). If a treating or examining physician's
12   opinion is uncontradicted, the ALJ may reject it only by offering "clear and
13   convincing reasons that are supported by substantial evidence." *Bayliss v.*
14   *Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005); *Lester v. Chater,* 81 F.3d 821, 830
15   (9th Cir. 1995). "If a treating or examining doctor's opinion is contradicted by
16   another doctor's opinion, an ALJ may only reject it by providing specific and
17   legitimate reasons that are supported by substantial evidence." *Id.* The opinion of
18   a nonexamining physician may serve as substantial evidence if it is supported by
19   other independent evidence in the record. *Andrews*, 53 F.3d at 1041.

20       *1. Dr. Abbott*

21       In October 2017 and August 2020 Plaintiff's treating physician, Dr. Abbott,
22   completed medical report forms and provided his opinion on Plaintiff's level of
23   functioning during the period at issue. Tr. 862-63, 2658-60. In 2017, Dr. Abbott
24   opined Plaintiff's diagnoses included "multitrauma due to fall including pelvic
25   fracture and left elbow fracture" in 2007 and history of motor vehicle accident with
26   "scapula fracture" in 2006. Tr. 872. He noted that "MRI confirmed multiple
27   fractures." *Id*. He reported that in "2009-2010, during the day she spent 8-12
28   hours lying down" and that treatment during that time included narcotic "pain

meds (oxycodone)." *Id*. He opined her physical conditions were likely to cause her pain, her prognosis was fair, and he reported that in "2009-2010, she tried to work at Pier 1 … but it caused more pain." Tr. 861-62. He opined that in 2009-2010 she was severely limited and unable to meet the demands of full-time sedentary work, or to physically travel on a daily basis. Tr. 862.

In 2020, Dr. Abbott opined her diagnoses were history of 2007 pelvic fracture and elbow fracture, and 2006 history of motor vehicle accident scapula fracture and he explained her "major injury" was the December 31, 2007 fall, and that her 2006 motor vehicle accident was a "moderate injury." Tr. 2658. He explained that in 2009-2010 she was treated with oxycodone, which "could have caused drowsiness/constipation" in 2009-2010. *Id*. He opined due to her trauma history she had conditions likely to cause pain. *Id*. He opined her prognosis was fair and that she tried to work in 2009-2010 but it caused pain, and that in 2009-2010 she was severely limited and unable to meet the demands of full-time sedentary work, or to physically travel on a daily basis. Tr. 2659. The ALJ gave Dr. Abbott's opinions little weight. Tr. 879. As Dr. Abbott's opinions were contradicted by the opinion of Dr. Fuchs and the state agency examiners, the ALJ was required to give specific and legitimate reasons to reject Dr. Abbott's opinion. *See Bayliss*, 427 F.3d at 1216.

The ALJ gave Dr. Abbott's opinions little weight because they were rendered seven and ten years after the date last insured, and "his own treatment notes from the relevant period are generally unsupportive of the restrictions he assessed," he did not explain his opinion, and it was vague and unsupported by the evidence of record. Tr. 879. Plaintiff contends the ALJ failed to give legally sufficient reasons to discount the treating source opinion because Dr. Abbott's opinion was relevant to her conditions during the period at issue, the ALJ speculated and misstated the record, and Dr. Abbott's treatment records were consistent with his opinion, and he provided specific functional limitations based

on his experience and treatment records during the period at issue, which documented objective findings, along with Plaintiff's reports of pain and continued treatment with narcotic pain medication.  ECF No 16 at 12-16.  Defendant contends the ALJ reasonably gave little weight to Dr. Abbott's 2017 and 2020 opinions, because they were inconsistent with contemporaneous treatment notes, which showed only some tenderness in Plaintiff's neck and back, but otherwise "described routine medication management"; and because Dr. Abbott's opinions were unsupported by the record and "the evidence of record shows that Plaintiff's condition improved following her 2006 accident."  ECF No. 19 at 15-16.

The ALJ gave the opinions little weight because they were rendered 7 and 10 years after Plaintiff's date last insured.  Tr. 879.  The ALJ is required to consider "all medical opinion evidence."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)).  Additionally, the extent to which a medical source is "familiar with the other information in [the claimant's] case record" is relevant in assessing the weight of that source's medical opinion.  *See* 20 C.F.R. §§ 404.1527(c)(6).  Here, although Dr. Abbott provided his opinions many years after Plaintiff's date last insured, he indicated he was her treating provider during the period at issue and he explained on the form he provided that his opinion was based on his treatment records from that time.  Tr. 862-63, 2658-60.  Dr. Abbott is her primary care provider who has treated her from 2006 through present, including during the period at issue, and on this record the fact that his opinions were rendered 7 and 10 years after her date last insured was not a specific and legitimate reason to give his opinion little weight.

The ALJ also gave Dr. Abbott's opinions little weight because "his own treatment notes from the relevant period are generally unsupportive of the restrictions he assessed," he did not explain his opinion, and it was vague and unsupported by the evidence of record.  Tr. 879.  Relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the

opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole. *Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631. A physician's opinion may also be rejected if it is unsupported by the physician's treatment notes. *Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003). Here, the ALJ concluded "[Dr. Abbott] states she was unable to walk for three months, but this likely refers to her status after the 2006 motor vehicle accident, and Dr. Abbott does not offer further clarification," and "his entire assessment seems to hinge of the injuries sustained from the accident, as he included pelvic fracture, scapula fracture, and left elbow fracture as her sole diagnosis." Tr. 879.

As discussed in relation to Plaintiff's symptom complaints, *supra*, however, this is a misstatement of the evidence, as Plaintiff suffered *two* accidents, including a serious fall with injuries that the ALJ failed to discuss, and which Dr. Abbott explained was her "major injury" in his 2020 opinion. Tr. 2658. Dr. Abbott explained that due to her history of traumatic injuries she had conditions likely to cause pain in 2009-2010; and that at that time she was treated with oxycodone, with side effects including drowsiness, and this is consistent with his and other providers treatment records from the time showing chronic pain in her neck, back, and pelvis status post multiple fractures. Tr. 2658; *see, e.g.*, Tr. 307, 310, 313, 316, 319, 322, 334. While the ALJ found Dr. Abbott's opinion vague, he indicated that in 2009-2010 she was severely limited and unable to meet the demands of full-time sedentary work, or to physically travel on a daily basis, which are concrete limitations; and his findings are consistent with his treatment records from that time, showing she attempted to return to work and could not sustain it due to pain. Tr. 2659. The ALJ's finding Dr. Abbott's opinion was due little weight because his treatment notes from the relevant period are generally unsupportive of the restrictions he assessed, he did not explain his opinion, and it was vague and unsupported by the evidence of record is not supported by substantial evidence,

1   and this was not a specific and legitimate reason to reject the treating provider's

2   opinions.

3       *2. Dr. Burkett*

4       In November 2017, Dr. Burkett reviewed Plaintiff's file and rendered an

5   opinion on her level of functioning.  Tr. 863-67.  Dr. Burkett diagnosed her with

6   fracture cervical spine with C5-C6 fusion from a 2006 MVA with ongoing neck

7   pain; shoulder injuries, pelvic and hip injuries, degenerative arthritis of the hip,

8   status post left hip replacement September 2016, hospitalization for pelvic fracture

9   January 2008, and chronic pain management for failed spine surgeries.  Tr. 865.

10  He opined Plaintiff "has well documented injuries with MVA and fall from a deck

11  in her records . . . she has had two major surgeries, one before her onset and one

12  after."  Tr. 866.  He opined the records, which were not all available upon state

13  agency review, fully support hip, back and pelvic injuries." *Id*.  He opined

14  considering her pain, combination of problems, and lack of sustainable function,

15  she was "much more limited than the light level RFC" found by the state agency.

16  *Id*.  He opined with her neck problem "even after surgery," arm and shoulder pain,

17  left hip problems "even after surgery," and "low back and pelvic pain and

18  problems" she equaled listing 1.02 from her alleged onset date; and that she could

19  equal listing 1.04 "for many of the same reasons counting all her orthopedic

20  problems with issues of pain, weakness, and leg problems." *Id*.  He further opined

21  she could not "stand more than an hour per day at work and or [sic] lift over 5-10

22  pounds with some reduction in gross manipulation to ½ of normal and little to no

23  overhead reaching and limited stooping and twisting."  He noted there is much

24  more evidence after her date last insured that was not discussed, and mentioned

25  weight bearing joint failure "quite early [in her] 50s . . . needed hip replacement on

26  the left," along with "shoulder issues yet to be addressed" as of his 2017 review of

27  medical records.  Tr. 866.  He explained she required opioids to manage her pain,

28  that multiple imaging studies showed findings including advanced degenerative

ORDER GRANTING PLAINTIFF'S MOTION . . . - 19

changes in her left hip and degenerative changes in her pelvis and lower spine, and that she eventually required left hip replacement in 2016 "as a result of the chronic trauma for a younger person." Tr. 865.

The ALJ did not explain the weight given to Dr. Burkett's opinion, despite the Appeals Council order directing the ALJ to further evaluate whether Plaintiff's impairments met or medically equaled a listed impairment, and to "give further consideration to the opinion evidence . . . and explain the weight given to such opinion evidence." Tr. 880, 1039-40. In Social Security cases, when the Appeals Council remands a case to the ALJ, the ALJ must take any action ordered by the Appeals Council and must follow the specific instructions of the reviewing court. 20 C.F.R. § 404.977; *Samples v. Colvin,* 103 F. Supp. 3d 1227, 1231-32 (D. Or. 2015). The ALJ did note that "the AC also noted that Rox Burkett, M.D., opined that the [Plaintiff's] impairments were medically equivalent in severity to listings 1.20 and 1.04 prior to her date last insured" in his discussion of listed impairments at step three. Tr. 875. Elsewhere in the decision, however, in addressing Dr. Burkett's medical opinion as to Plaintiff's imitations the ALJ noted only that "Dr. Burkett did not elaborate on when these limitations began, but even assuming that he believed they began during the relevant period, they are unsupported by the objective evidence described above." Tr. 880. Dr. Burkett explained more than once in his opinion that he "only focus[ed] on the information available in the insured time from 2006 to DLI of 6/30/2010," however, noting that while he reviewed the entire record available to him in 2017 and Plaintiff "has scores of visits in the time since the DLI that only support worsening but according to policy will again limit the information up to the DLI." Tr. 864, 865. The ALJ failed to assess and explain the weight given to Dr. Burkett's opinion and her reasons to reject it were not supported by substantial evidence.

### 3. *Dr. Fuchs*

At the July 2020 hearing Dr. Fuchs testified and provided an opinion on Plaintiff's level of functioning. Tr. 953-67. Dr. Fuchs opined her impairments were status post C5-C6 fusion, and status post total hip arthroplasty in 2016. Tr. 953. He testified that the records at issue showed only tenderness in the cervical and lumbosacral spine, no problems with her left shoulder, and "during that time period . . . I don't find any severe problems with [Plaintiff]. Tr. 954. He opined she did not meet or equal a listed impairment during the period at issue prior to her date last insured. Tr. 955. He opined she could continuously lift and carry 10 pounds, "even frequently up to 20 lifting and carrying," and that she could sit for 2 hours, stand and walk for one hour, "maybe two hours standing and/or walking"; and he clarified, at the ALJ's request, that in an eight hour workday "she should be able to remain sedentary for six hours in the appropriate workplace . . . certainly three hours, clearly, that she should be able to ambulate, and maybe even four." Tr. 955-56. He opined she did not require use of a cane, had no limitation in the use of her hands, but that she should not use foot controls. Tr. 956. He testified she could occasionally climb stairs but not ladders or scaffolds; and she could frequently balance, occasionally stoop, kneel, and crouch, but should not crawl; she should avoid unprotected heights and vibration, could frequently operate a motor vehicle, and could have occasional exposure to wetness, extreme cold, and extreme heat. *Id.*

After the February 2021 supplemental hearing, on September 10, 2020 the ALJ forwarded additional evidence for Dr. Fuchs' review with a medical interrogatory. Tr. 2661-62. The ALJ asked him to review the new evidence and provided an interrogatory asking "does the additional medical evidence change your opinion given in your previous testimony regarding the nature and severity of [Plaintiff's] impairment(s) during the relevant time period?" *Id.* On October 21, 2020, Dr. Fuchs submitted his response, explaining: "I do not have notes on my

original testimony," but that "reviewing the current new material, I believe [Plaintiff] has the following abilities." Tr. 2665-66. He opined she could lift and carry 10 pounds continuously and 20 pounds occasionally; sit for two hours at one time and stand and walk one hour at a time; and in an eight hour day she could sit six hours and stand and/or walk four hours. Tr. 2666. Regarding "upper limbs," he opined she could perform "occasional overhead bilaterally [and] with no further limits"; and "foot controls occasional." *Id*. Regarding postural limitations, he opined she could occasionally climb stairs and ramps but no ladders; she could occasionally balance, stoop, kneel, and crouch, but could not crawl. *Id*. Regarding environmental limitations, he opined "no heights, occasional mechanical, motor vehicle, humidity. No extreme cold, heat, vibrations." *Id*. He opined she had "no limits re shopping, transportation etc." *Id*.

The ALJ gave Dr. Fuchs' opinion significant weight because he had the opportunity to review the entire medical record, he is a board-certified orthopedic surgeon, he is familiar with Social Security regulations, and "the record support[s] his opinion far more than the opinions of Drs. Burkett and Abbott." Tr. 880.

Plaintiff contends the ALJ failed to provide any explanation or citation to support his finding that Dr. Fuchs' opinion was supported more by the record than Dr. Burkett and Dr. Abbott, and notes that Dr. Burkett is also familiar with the social security regulations. ECF No. 16 at 18-19. Defendant contends the ALJ reasonably gave Dr. Fuchs' opinion significant weight because it was informed by the entire medical record, he was a specialist familiar with the Social Security Regulations, and the ALJ discussed the relevant objective evidence at several points in the decision in connection with Plaintiff's symptom testimony, as well as in her analysis of Dr. Abbott's opinion. ECF No. 19 at 18. However as discussed *supra*, the ALJ erred in her discussion of Plaintiff's symptom testimony, and her conclusions concerning Dr. Abbott's opinions were not supported by substantial evidence. Further, upon questioning by Plaintiff's representative at the hearing,

Dr. Fuchs testified he "had not made note of" the opinions of Dr. Abbott and Dr. Burkett along with other relevant evidence, and he was unable to answer questions about the opinions of Dr. Burkett and Dr. Abbott and appeared unfamiliar with other aspects of Plaintiff's record; the ALJ noted Plaintiff's concern that Dr. Fuchs had not carefully reviewed the record, such that he appeared to be viewing evidence including the opinions of Dr. Burkett and Dr. Abbott for the first time at the hearing, was not aware of all of Plaintiff's impairments during the period at issue, and failed to cite to any records in his response to the new evidence.  Tr. 875, 1207; *see, e.g.*, Tr. 960, 964-967.  The ALJ's conclusion that Dr. Fuchs opinion was due significant weight because the record supports his opinion far more than the opinions of Dr. Burkett and Dr Abbott is not supported by substantial evidence.

**C.    Other Issues**

Plaintiff also contends the ALJ erred by not assessing disability under the Grid Rules; the ALJ failed to meet her step five burden; and the ALJ failed to properly assess the lay witness opinions.  ECF No. 16 at 5-7, 19-21.  As the case is remanded for errors in assessing the medical testimony and plaintiff symptom clams, the ALJ shall reperform the sequential analysis, making new findings at each step and taking the testimony of a vocational expert, and shall reconsider all lay witness statements, crediting the opinions or providing germane reasons to discount them.

## CONCLUSION

Plaintiff argues the decision should be reversed and remanded for the payment of benefits.  ECF No. 19 at 20.  The Court has the discretion to remand the case for additional evidence and findings or to award benefits.  *Smolen*, 80 F.3d at 1292.  The Court may award benefits if the record is fully developed and further administrative proceedings would serve no useful purpose.  *Id*.  Remand is appropriate when additional administrative proceedings could remedy defects.

ORDER GRANTING PLAINTIFF'S MOTION . . . - 23

*Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989). The Court will also not remand for immediate payment of benefits if "the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Here, the Court finds that further proceedings are necessary because the ALJ limited her discussion of the evidence to the distant 2010 date last insured, and there are significant medical records and treatment after that date. The Court therefore remands the claim for further proceedings for the ALJ to reconsider all relevant medical evidence and reevaluate Plaintiff's symptom claims, to reassess conflicting medical opinion evidence, and to perform the five-step sequential evaluation anew. For these reasons, the Court remands this case for further administrative proceedings.

The ALJ's decision is not supported by substantial evidence and not free of harmful legal error. On remand, The ALJ shall reevaluate the medical evidence of record, being mindful to consider all Plaintiff's impairments, make new findings on each of the five steps of the sequential evaluation process, take the testimony of a vocational expert, and issue a new decision. The ALJ shall reassess all medical opinion evidence and shall also reassess plaintiff's subjective complaints, taking into consideration any other evidence or testimony relevant to Plaintiff's disability claim.

Accordingly, **IT IS ORDERED:**

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 16**, is **GRANTED**.

2.    Defendant's Motion for Summary Judgment, **ECF No. 19**, is **DENIED**.

3.    The matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

4.    An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

DATED February 14, 2023.



_____
ALEXANDER C. EKSTROM
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING PLAINTIFF'S MOTION . . . - 25